UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DJAMIL R. ROBERTS,                    )
                                      )
                    Petitioner,       )
                                      )     Cause No. 1:19-cv-03107-JMS-TAB
        v.                            )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
                    Respondent.       )

## MEMORANDUM IN OPPOSITION
## TO ROBERTS'S 28 U.S.C. § 2255 MOTION

Djamil Roberts has filed a motion, pursuant to 28 U.S.C. § 2255,

claiming that his counsel was ineffective when advising him to plead guilty

and for failing to challenge search warrants.  (Dkt. 1.)  Roberts's counsel was

not ineffective and his plea was extremely beneficial.  Thus, this Court should

deny Roberts's challenges.

## BACKGROUND[1]

### *Roberts's Criminal Conduct*

The facts of Roberts's crimes, as provided in the stipulated factual basis

in the plea agreement, are as follows:

---

[1] Throughout the brief, the government will make the following references:
Dkt. = the docket in this case; Crim. Dkt. = the docket in Roberts's criminal
case, Cause No. 1:17-cr-197-JMS-MJD; PSR = Roberts's presentence report;
and Tr. = Roberts's plea and sentencing hearing transcript held on July 24,
2018.

On August 30, 2017, detectives with the Metro Drug Task Force (MDTF) in Indianapolis, Indiana obtained search warrants for 4355 Dunsany Circle (Indianapolis, Indiana) and Defendant's address in Avon, Indiana (the "Morning Sun Court residence"). These warrants were then executed on August 30, 2017, by officers from MDTF, Indiana State Police, and Plainfield Police Department.  4355 Dunsanny Circle was a residence utilized by Defendant as a location from where to store his marijuana.

During the search of 4355 Dunsany Circle Indianapolis, IN, investigators recovered the following: an active marijuana grow, consisting of 46 mature marijuana plants, in the living room, master bedroom, and bedroom; approximately 40 pounds of marijuana packaged in food saver sealed bags were located in a Field and Stream gun safe in the 2 car attached garage; and approximately two pounds of marijuana in vacuum sealed bags were located in the living room and the master bedroom.

During the search of the Morning Sun Court residence, investigators recovered the following:  a loaded Smith & Wesson .380 handgun bearing serial number CCV9138 was located in the Kitchen on top of the refrigerator; a loaded FNH 5.7 x 28 handgun bearing serial number 386303576 was located on top of the refrigerator; a loaded Bryco Arms .380 handgun bearing serial number 1260487 was located in the living room on a shelf behind a box; a loaded Glock 19, 9mm handgun bearing serial number AXE506 was located in bedroom #1 in between the mattress and box spring; a loaded Taurus Magnum .38 Special bearing serial number T649192 was located in bedroom #1, in between the mattress and box spring; a loaded Smith & Wesson 40 shield, 40 caliber bearing serial number HUA8161 was located in bedroom #1 in the op drawer of a dresser; a loaded Glock 30, .45 caliber bearing serial number TVY493 was located in master bathroom on top of the linen shelf; a loaded Taurus .45 caliber, model PT945 bearing serial number NRG33069 was located in the master bathroom on top of the linen shelf; two digital scales with cocaine residue were located in a kitchen cabinet next to the pantry; $310,700.50 of U.S. currency was located in a Field and Stream gun safe, which was in the living room of the residence.

On August 30, 2017, detectives also obtained search warrants for
the following storage units:  #3, #176, and #422, all located at A
Westside Storage, 2255 South Raceway Road, Indianapolis,
Indiana.  The rental contract for these three units reflects that
Defendant has been sole renter of unit 3 since 2014, and units
176 and 422 since 2016.  During the execution of the search
warrants at these storage units controlled by Defendant,
investigators recovered the following:  a loaded Omni American
tactical 5.56 rifle, bearing serial number NS028786 located in a
box next to the Field and Stream safe; an unloaded Masterpiece
Arms 9mm with a high capacity magazine, and noise suppressor
was in a black case on top of the Field and Stream safe; twenty-
four vacuum sealed bags of marijuana, weighing 1,767.1 grams,
was located inside the Field and Stream safe; a brick of cocaine,
weighing 1,015.92 grams was located inside the Field and Stream
safe; two large zip-lock bags of cocaine, weighing an aggregate
weight of 1,399.74 grams was located inside the Field and Stream
safe; $72,666 of U.S. currency; a large white digital scale was
located in a dresser drawer; 1,049.92 grams of marijuana and
279.08 grams of cocaine, both found in a vehicle within one of the
storage units.

A criminal records check reveal that Defendant is a previously
convicted felon.  Moreover, Defendant possessed, jointly or solely,
each of the firearms listed above, and each of these firearms were
manufactured outside the State of Indiana.

(Plea ¶ 15.)

### *Charges, Plea, and Sentencing*

On October 3, 2017, a two-count indictment was filed, charging Roberts

with possession with intent to distribute 500 grams or more of cocaine and a

detectable amount of marijuana, in violation of 21 U.S.C. § 841(a) (Count 1),

and possession of a firearm as a previously convicted felon, in violation of 18

U.S.C. § 922(g).  (Crim. Dkt. 10.)

On September 25, 2017, Joseph Cleary entered his appearance as court-appointed counsel for Roberts.  (Crim. Dkt. 8.)  On January 8, 2018, retained counsel, Harold Ansell filed his appearance to represent Roberts.  (Crim. Dkt. 26.)  Cleary was granted permission to withdraw.  (Crim. Dkt. 27-28.)

On April 19, 2018, the parties filed a petition to enter a plea of guilty and plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), wherein Roberts agreed to plead guilty to Count 1.  (Crim. Dkt. 35.)  The plea also included notice of the 21 U.S.C. § 851 enhancement for a prior drug conviction the government filed before sentencing.  (*Id.*)  In exchange for his plea of guilty, the government agreed to dismiss Count 2 and recommend a sentence at the low end of the advisory guideline range.  (Plea ¶¶ 1, 7.)

The parties stipulated to a base offense level of 26 with two levels added for possession of a firearm in the course of the offense; two levels added for maintaining a premise for the purpose of manufacturing or distributing controlled substances; and three levels were subtracted for acceptance of responsibility.  (Plea ¶ 19.)

Roberts agreed to waive his right to appeal the conviction and sentence as long as he received the agreed-upon sentence.  (Plea ¶ 20.)  Roberts also

agreed not to contest, or seek to modify his conviction or sentence in any action, including § 2255.  (Plea ¶ 20.)

A presentence report (PSR) was prepared.  (Crim. Dkt. 39.)  The PSR guideline calculation was consistent with that provided in the plea agreement.  (PSR ¶¶ 17-27.)  Roberts was found to have a criminal history category of II.  (PSR ¶ 38.)

Thus, his guideline imprisonment range was 78 to 97 months.  (Plea ¶ 71.)  However, the statutory authorized minimum sentence of 10 years was greater than the maximum of the guideline range; therefore, his guideline term of imprisonment is 120 months.  (*Id.*)

On July 24, 2018, an information was filed pursuant to § 851, alleging that Roberts had a prior drug felony convictions.  (Crim. Dkt. 43.)  Under 21 U.S.C. § 841(b), any person convicted under that section is subject to a mandatory minimum sentence of 10 years' imprisonment.

On July 24, 2018, the Court held Roberts's change of plea and sentencing hearing.  (Crim. Dkt. 44.)  After finding that Roberts was fully competent and capable of entering an informed plea, was aware of the nature of the charge and the consequences of the plea, and this his plea of guilty was knowing and voluntary supported by an independent basis of fact, the Court accepted the binding plea agreement and adjudged Roberts guilty as charged in Count 1 of the Indictment.  (Tr. 20-22.)

The Court then moved on to the sentencing portion of the hearing. The Court sentenced Roberts to 120 months' imprisonment, to be followed by five years of supervised release. (Crim. Dkt. 45.)

Following the terms of his plea agreement, Roberts did not file an appeal.

But, on July 24, 2019, Roberts filed a motion to vacate his sentence under § 2255. (Dkt. 1.) Roberts claims his counsel was ineffective for failing to challenge the search warrants and coercing Roberts to plead guilty. (Dkt. 1.)

## STANDARD OF REVIEW

"Relief under § 2255 'is reserved for extraordinary circumstances.'" *Hays v. United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)). The reason is straightforward: "because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

"Hence, relief is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)); *see* 28 U.S.C. § 2255(a).

6

## DISCUSSION

## I.    Ineffective Assistance of Counsel Standard

In order to prove ineffective assistance of counsel, Roberts must meet the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show that (1) his attorney performed deficiently, and (2) the deficiency in performance prejudiced him.  *Id*.

In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness.  *Strickland*, 466 U.S. at 689; *Holman v. Gilmore*, 126 F.3d 876, 881-81 (7th Cir. 1997).  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

The prejudice prong of the *Strickland* test requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Strickland*, 466 U.S. at 694; *see also Bell v. Cone*, 535 U.S. 685, 697-98 (2002).  It is not enough for Roberts to show that "the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.

7

A court "need not consider the first prong of the *Strickland* test if [it] find[s] that counsel's alleged deficiency did not prejudice the defendant." *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003) (*citing Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)). "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Roberts's right to effective counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). On the performance prong, Roberts must show that counsel's representation in connection with the plea process "fell below an objective standard of reasonableness." *Id.* at 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). In this context, the Court must take particular care to avoid the "distortions and imbalance that can inhere in a hindsight perspective[.]" *Premo v. Moore*, 562 U.S. 115, 125 (2011).

To establish prejudice, Roberts must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Thus, Roberts must show prejudice "by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Moreover, Roberts's claims must be viewed in context of his guilty plea. "Surmounting *Strickland*'s high bar is never an easy task." *Lee*, 137 S. Ct. at 1967 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "[A]nd the strong societal interest in finality has 'special force with respect to convictions based on a guilty plea.'" *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). Thus, "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.*

Roberts cannot meet either prong of this standard for any of his claims and his motion should be denied.

## II. Roberts's Counsel Not Ineffective for Failing to Investigate and or File a Motion to Suppress Regarding the Search Warrant

Roberts claims that his counsel should have further investigated the search warrants and obtained an evidentiary hearing or filed a motion to suppress the warrants. (Dkt. 1-1, pp. 2-5.) Neither claim has merit.

The government addresses both claims—which fall for similar reasons—below because of their inherently intertwined nature.

### A. Roberts Cannot Show Any Deficiency in His Counsel's Investigation

A "petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what

9

the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003).

Roberts has failed to do so.  Because he has failed to provide what the result of any hypothetical investigation would have been, there is no support for his claim that his counsel performed unreasonably.   The record clearly reflects that Roberts has not met his required burden and, thus, his unsupported claim must fail.  *See Strickland*, 466 U.S. at 689; *Hardamon*, 319 F.3d at 951.

Regardless, Roberts could not meet the requisite standard.  "In a failure to investigate case, a defendant must prove that evidence uncovered during that investigation would have led the attorney to change h[is] recommendation to accept the plea offer."  *Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir. 2013) (citing *Hill*, 474 U.S. at 59).

But, as Roberts provides in his motion, his counsel did review the search warrants and affidavits and still recommended that he accept the government's plea offer.  (Dkt. 1-1, p. 2.)  Roberts's claim fails factually as well as legally.  This Court should deny it.

### B.   Robert's Cannot Show That His Attorney Was Deficient for Failing to File a Motion to Suppress

#### 1.  Roberts's Counsel's Decision Was Tactical

10

Instead of fleshing out his claims, Roberts offers only that his attorney should have filed a motion to suppress the search warrant.

But Roberts admits that his counsel reviewed these materials.  Roberts provides in his motion that his counsel did review the warrants and affidavits and afterwards told Roberts that the plea agreement "was a really good deal and suggested [he] should take it."  (Dkt. 1-1, p. 2.)

That epitomizes a strategic decision.  *Cf. Barnhill v. Flannigan*, 42 F.3d 1074, 1079 (7th Cir. 1994) (selecting which arguments to raise is strategic). And strategic decisions, made after a thorough investigation, "are 'virtually unchallengable.'"  *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690).

And, to be sure, courts have recognized the strategy of pleading early instead of moving to suppress.  Attorneys may make "the reasonable strategic decision not to pursue a motion to suppress—regardless of its underlying merit—because doing so would have undermined the plea agreement being negotiated at that time with the government."  *Perez v. United States*, 286 F. App'x 328, 332 (7th Cir. 2008); *see also Ayala v. Hatch*, 530 F. App'x 697, 701 (10th Cir. 2013); *United States v. Wintons*, 468 F. App'x 231, 233 (4th Cir. 2012); *United States v. Cervantes*, 267 F. App'x 741, 743 (10th Cir. 2008); *United States v. Thomas*, 171 F. App'x 868, 870 (D.C. Cir. 2005); *United States v. Wilkerson*, 133 F. App'x 564, 567 (10th Cir. 2005); *United States v.*

11

*Muriel*, 111 F.3d 975, 979 (1st Cir. 1997); *United States v. Cruz*, 785 F.2d 399, 406 (2d Cir. 1986); *Coe v. United States*, 2009 WL 1904376, at *6 (C.D. Ill. June 30, 2009).

The strategy is not difficult to discern. As with many attorneys facing similar situations, Robert's counsel "wanted to try to get the [government] to work with him on a favorable plea agreement and did not think that filing a motion to suppress . . . would advance this strategy," *Ayala*, 530 F. App'x at 701, thus, the "decision to plead guilty, rather than file a motion to suppress, was a tactical decision," *Muriel*, 111 F.3d at 979. Believing a motion to suppress would fail anyway, it is apparent that his counsel reasonably calculated that filing one would scuttle negotiations on behalf of his client.

Indeed, *Strickland* renders that decision "virtually unchallengeable." *Strickland*, 466 U.S. at 690. In fact, "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Id.* at 124. Because Robert's counsel's reviewed the materials, his decision to not file a suppression motion was tactical.

### 2.  No Colorable Suppression Claim Existed

12

To prevail on his claim that his counsel was ineffective for failing to move to suppress the evidence, Roberts "must show that such a motion would have succeeded." *Craigg v. United States*, 400 F. App'x 73, 74 (7th Cir. 2010); *see also United States v. Carter*, 355 F.3d 920, 924 (7th Cir. 2004); *Owens v. Wainwright*, 698 F.2d 1111, 1114 (11th Cir. 1983).  He has failed to do so.

Counsel is not ineffective for failing to present an issue, or present a motion, that is certain to fail.  *United States v. Carter*, 355 F.3d 920, 924 (7th Cir. 2004); *Owens v. Wainwright*, 698 F.2d 1111, 1114 (11th Cir. 1983).

Roberts has not explained what grounds such a motion could have been based on and none is apparent from the record.  Roberts has failed to carry his burden to show the motion would have been granted.

Nothing Roberts presents shows deficient counsel and his claim should be denied.

## B.  Roberts Cannot Show Prejudice

Roberts cannot show that Robert's counsel's performance prejudiced him.  First, he has not claimed that he, otherwise, would have proceeded to trial.  *Lee*, 137 S. Ct. at 1966-67 (a defendant facing such long odds will rarely be able to show prejudice form accepting a guilty plea that offers him a better resolution than would likely after trial.)  In fact, he provides that he would have pled in open court with no agreement.  (Dkt. 1-1.)  His claims fails at the start.

Nor has he shown that any investigation would have changed his counsel's advice (or Roberts's decision).  Similarly, he has not shown that a suppression motion would have been granted and changed the outcome of the plea processs.

Roberts's claim should be denied.

## III.   Roberts Fails to Show that his Counsel's Advice to Accept the Plea Agreement Amounted to Ineffective Assistance of Counsel

### A.   Roberts Fails to Show Deficient Performance

Roberts next argues his counsel manipulated him into enter a plea of guilty by providing that the plea offered by the government was a "really good deal" and abandoning his "original potential defense. Of exploiting the technicalities, he had previously discovered.  As he is doing so in a persuasive manner."  (Dkt. 1-1, p. 2.)

But that, in fact, shows competent performance.  What Roberts describes is that after his counsel reviewed the evidence, his counsel provided advice, and explained the options Roberts had available to him.  This is not manipulation or intimidation as Roberts now claims.

"In the plea bargaining context, a reasonably competent lawyer must attempt to learn all of the relevant facts of the case, make an estimate of the likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty."  *Brock-Miller v. United States*, 887

F.3d 298, 308 (7th Cir. 2018) (citing cases); *see also Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) (to demonstrate deficient performance in the context of a guilty plea, a petitioner must demonstrate that his counsel's advice regarding the plea was objectively unreasonable). The record and even Roberts, himself, reflect that this is exactly what his counsel did here.

Second, Roberts's claim is legally insufficient. Roberts does not claim that he would not have pled guilty nor that he would have gone to trial. That is necessary to his claim. *See Lee*, 137 S. Ct. at 1966-67. And his counsel cannot have been deficient for advising to enter a (beneficial) plea based on factually correct information that Roberts wanted to accept.

Regardless, Robert's counsel's advice was not deficient because the plea was beneficial. Robert's counsel negotiated a deal in which the government dismissed Count 2, provided a three-level reduction for acceptance of responsibility, and requested a sentence at the low end of the advisory guideline range. That is the sign of an effective attorney, not a deficient one.

Next, the plea and sentencing hearing transcript shows that trial counsel performed competently. He reviewed the charges with Roberts, explained the elements necessary for the government to secure convictions on the charges, discussed the evidence as it bears on those elements, and explained the sentencing exposure Roberts faced. (Tr. 6.) The record also shows that trial counsel reviewed the plea agreement with Roberts and

15

Roberts confirmed he read and understood its terms.  (Tr. 7.)  The record further reflects that Roberts confirmed he was not forced or threatened into signing the plea agreement.  (*Id*.)

And, Roberts obtained the most lenient offer the government intended to make in his case.  (Tr. 6.)  Considering the persuasive and conclusive nature of the evidence against Roberts, all of which reduced the likelihood of a more lenient sentence, an early plea deal was a reasonable strategy. Roberts's attorney was not deficient for viewing the overwhelming evidence and advising Roberts to plead guilty.

The record shows that Robert's counsel negotiated a favorable plea and disproves Roberts's claim of deficient performance.  Roberts's bald assertion that he "sided with Mr. Ansell for whatever reason whether through manipulation or intimidation.  I felt I had no other option left but to sign the plea" fails to support his claim that he did not voluntarily plead and is insufficient to support his claim for relief.  *Burris v. United States*, 430 F.2d 399, 401-02 (7th Cir.1970) (affirming district court's denial of habeas relief where petitioner offered no evidence in support of his bald assertions).

Roberts has failed to establish that his counsel's performance was deficient.

**B.   Roberts Cannot Show Prejudice**

Roberts cannot show that his counsel's performance prejudiced him.
First, he does not claim that he would have proceeded to trial. *Lee*, 137 S. Ct.
at 1966-67. That is, at the start, fatal to his claim.

In fact, he does not dispute that he is guilty or that he would not have
plead guilty, he just wanted a chance to argue his counsel should have
claimed that the search warrant was not valid. (Dkt. 2.) But, considering he
has not come close to establishing a colorable suppression argument, he
cannot show that the outcome of the plea process would have been different.
Roberts's claim that his plea was not voluntary therefore must fail.

Robert's counsel's advice to accept the government's plea offer not only
meets the *Strickland* standard of reasonableness, but also remains the best
strategy even in hindsight. Roberts has failed to show any prejudice when he
followed counsel's advice and accepted a beneficial plea deal.

## IV.   Roberts's Plea Was Knowing and Voluntary

To the extent that Roberts is claiming that his plea was unknowing and
involuntary, such a claim would also fail.

"In order for a plea to be valid, it must be made voluntarily, knowingly,
and intelligently." *United States v. Hays*, 397 F.3d 564, 567 (7th Cir. 2005)
(citing cases). A plea is voluntary when it is not induced by threats or
misrepresentations, and the defendant is made aware of the direct
consequences of the plea. *United States v. Jordan*, 870 F.2d 1310, 1317 (7th

Cir.1989) (*citing Brady v. United States*, 397 U.S. 742, 755 (1970)).  In evaluating the constitutional validity of a guilty plea, courts look to the totality of the circumstances surrounding the plea and grant the defendant's solemn declaration of guilt a presumption of truthfulness.  *United States v. Moussaoui*, 591 F.3d 263, 277 (4th Cir. 2010).

Roberts's claim that his plea of guilty was under "manipulation or intimidation" is clearly refuted by the record.  (Dkt. 1-1, p. 2.)  *See United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) ("A defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, however, faces a heavy burden of persuasion.") (internal quotation marks and citation omitted).

The Court confirmed that Roberts understood the plea and this was the complete plea agreement that he agreed too without any other promises or assurances and he stated it was.  He did not claim at that time that he felt "manipulated or intimidated" into pleading.  In fact, the record reflects the opposite:

> THE COURT: Mr. Roberts, did you review and sign the plea agreement? I am sorry, did you review and discuss the plea agreement with your attorney before you signed it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And is the plea agreement the complete agreement that you made with the Government?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promises or assurances, Mr. Roberts, to persuade you to either plead guilty or sign the plea agreement?

THE DEFENDANT: No, they have not.

THE COURT: Has anybody forced you or threatened you in any way to get you to either plead guilty or sign the plea agreement?

THE DEFENDANT: No.

THE COURT: Do you believe you understand the plea agreement?

THE DEFENDANT: Yes, I do.

THE COURT: We will be going over it in just a minute. Are you pleading guilty today of your own free will and because you are guilty?

THE DEFENDANT: That, I am.

(Tr. 6-7.)

Roberts alleges nothing to cast doubt upon the voluntariness of his plea.  Nor does he make any claims of innocence.

And the contemporaneous evidence refutes any such claim.  Roberts signed the plea agreement which specified that: he understood the terms and they correctly reflected the results of the plea negotiations; was fully satisfied with his attorney's representation; made no claim of innocence; and, was freely and voluntarily pleading guilty.  (Crim. Dkt. 35.)

19

The Court's plea colloquy further removes any doubt.  At the plea hearing, the Court conducted a thorough colloquy pursuant to Rule 11.  (Tr. 5-6.)  Roberts, sworn under oath, affirmed his understanding of the charges against him, the terms of the plea agreement, and entered his plea of guilty. (Tr. 21.)  And the Court accepted his plea as knowing and voluntary.  (Tr. 21-22.)

Roberts cannot go back against his knowing and voluntary statements now.  The "[e]ntry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard."  *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir.1999).  The statements made by Roberts in the plea agreement and during the plea hearing are presumed to be true.  *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000); *see also United States v. White*, 597 F.3d 863, 868 (7th Cir.2010) (stating that "[v]oluntary responses made by a defendant under oath before an examining judge ... are binding.").

Roberts cannot show that his plea was unknowing or involuntary. Roberts's claim should be denied.

## CONCLUSION

For all the foregoing reasons, the United States respectfully urges the

Court to deny Roberts's § 2255 motion.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:   s/Michelle P. Brady
Michelle P. Brady
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, a copy of the foregoing

Response in Opposition to Section 2255 Motion was filed electronically and a

copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid

and properly addressed to the following:

        Djamil Roberts
        Register No. 15965-028
        FCI Terre Haute
        Inmate Mail/Parcels
        P.O. Box 33
        Terre Haute, IN 47802

                                    s:/Michelle P. Brady
                                      Michelle P. Brady
                                      Assistant United States Attorney
                                      Office of the United States Attorney
                                      10 W. Market St., Suite 2100
                                      Indianapolis, Indiana 46204-3048